# IN THE COURT OF APPEALS OF IOWA

No. 15-0892
Filed August 5, 2015

**IN THE INTEREST OF T.S.**
    **Minor Child,**

**P.S., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Susan Flaherty, Associate Juvenile Judge.

A father appeals the termination of his parental rights to his nine-year-old son. **REVERSED.**

Zachary Crowdes of Crowdes Law Office, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Janet Hoffman, Assistant Attorneys General, Jerry Vander Sanden, County Attorney, and Rebecca Belcher, Assistant County Attorney, for appellee.

W. Eric Nelson of State Public Defender's Office, Cedar Rapids, for mother.

Carrie Bryner, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, J.**

A father appeals the juvenile court order terminating his parental rights to his son, T.S. The court based its termination on one statutory ground: Iowa Code section 232.116(1)(e) (2013). That provision has three elements:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

Because the State did not prove the third element, we must reverse.

## I.    Background Facts and Proceedings

T.S. was born in 2005. His biological father, Peter, had no established custody or visitation rights and had very limited contact with T.S. as he grew up. T.S. and his half-sister, T.C., were living primarily with a maternal grandfather in June of 2013, when police searched their mother's home and found methamphetamine and drug paraphernalia. At the request of the Iowa Department of Human Services (DHS), the juvenile court ordered the children removed from their mother's custody. The court adjudicated them as children in need of assistance (CINA) on July 10, 2013.

At an August 14, 2013 dispositional hearing, Peter stipulated to T.S. remaining in his maternal grandfather's care. The court ordered DHS to develop a plan for visitation between T.S. and Peter, who had not seen his son in two years. Father and son had permission to begin joint therapy sessions in October

of 2013, but Peter was not convinced the therapy was necessary and waited five months before getting the sessions started. Peter underwent a mental health evaluation in November of 2013 and received no recommendation for treatment.

Peter and T.S. did not share a bond when they first started interacting on March 31, 2014. But after two or three play therapy sessions intended to build their relationship, the therapist said they were ready for traditional visits. The FSRP (Family Safety, Risk and Permanency) worker testified the visits "would go fine" for the most part. T.S. struggled a bit with the more structured routine at his father's house. T.S. also did not like it when the father's family members would call him "Junior" rather than his given name. The FSRP worker shared parenting suggestions with Peter, but had no major safety concerns about the father's interactions with T.S.

The visits started out fully supervised on May 5, 2014 and moved to semi-supervised on September 21. The visits took place in Peter's home and lasted three to four hours. T.S. reported he enjoyed spending time with Peter and his family. T.S. commonly would work on his homework and Peter would cook dinner. Peter was consistent in his participation and only missed two visits, for scheduling reasons, between June and December of 2014.

Notwithstanding Peter's progress in visitation, the State told the court at an October 2014 permanency hearing that it intended to file a petition to terminate parental rights. At a December 5, 2014 review hearing, the guardian ad litem (GAL) for T.S. requested Peter take a drug test. Peter had a history of drug convictions and the GAL had received information alleging his recent use.

Peter agreed to take the test following the hearing, but did not do so. Since the day of the hearing, Peter has not had any contact with the DHS, the juvenile court, or T.S.

On January 7, 2015, the State filed its petition to terminate parental rights, basing its request on Iowa Code sections 232.116(1)(a) and (f). The State later amended its petition to include section 232.116(1)(e) as an additional ground. The court held a hearing on March 20, 2015. Peter did not participate in the hearing, but his attorney was present. On May 7, 2015, the court issued an order terminating Peter's parental rights under subsection (e), and dismissed the other two grounds.[1] Peter now appeals.

## II. Standard of Review

We review the juvenile court's order terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). Facts supporting termination must be established by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "Evidence is 'clear and convincing' when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

## III. Analysis

Peter argues the State failed to offer clear and convincing evidence that he has not "maintained significant and meaningful contact" with T.S. "during the previous six consecutive months" as required by section 232.116(1)(e). He also claims termination was not in his son's best interest. Because we are persuaded

---

[1] The mother agreed to voluntarily terminate her parental rights and is not a party to this appeal.

by his first argument concerning the statutory element, we do not reach the best-interest issue.

Peter acknowledges the first two elements of subsection (e) are satisfied; the court adjudicated T.S. as a CINA under section 232.96 and T.S. has been removed from the physical custody of his parents since August of 2014—significantly longer than the six consecutive months required in the statute. But Peter contends the record does not support the third element: his failure to maintain significant and meaning contact with T.S. during the previous six consecutive months. *See* Iowa Code § 232.116(1)(e)(3). The statute defines "significant and meaningful contact" as "the affirmative assumption by the parents of duties encompassed by the role of being a parent." *Id.* Those duties include, but are not limited to financial obligations, continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and establishing and maintaining a place of importance in the child's life. *Id.*; *see In re T.S.*, No. 14-1517, __ N.W.2d. __, __ (Iowa Ct. App. 2015) (discussing third element of subsection (e)).

The termination hearing occurred on March 20, 2015. Peter's last contact with T.S. was on December 5, 2014. So for three and one-half months, Peter had no significant and meaningful contact with his son. But before December 5, Peter had been engaging in regular visitation and the DHS had increased the frequency and decreased the level of supervision of those visits. For nine months—from March 31 to December 5, 2014—Peter had been working to

rekindle a relationship with his son, consistently participating in the visitation sessions approved by the DHS.

To compensate for its failure to meet the six-consecutive-month statutory requirement, the State adopts a gestalt theory of the action, arguing Peter "did not maintain significant and meaningful contact with T.S. during this entire case. Just showing up for visitations is not enough to reach the threshold of 'maintaining significant and meaningful contact.'" The State contends Peter "has never established and maintained a place of importance in T.S.'s life. Nor has he made a genuine effort to complete the responsibilities in the case plan."

We reject the State's contentions. Peter complied with the DHS case plan during the last nine months of 2014. Peter found sufficient connection with T.S. during play therapy for the therapist to recommend visitation. Peter achieved enough parenting success during those visits that the DHS allowed Peter more independent contact with T.S. The State cannot satisfy section 232.116(1)(e)(3) by showing the parent did not always have a perfect bond with the child or had not yet achieved all of the goals for reunification. The element requires clear and convincing proof the parent did not maintain "significant and meaningful contact with the child *during the previous six consecutive months*."

The State did not prove that Peter had shed his responsibilities to T.S. for the six consecutive months leading up to the hearing. *See In re S.W.*, No. 15-0549, 2015 WL 3635722, at *5-6 (Iowa Ct. App. June 10, 2015) (finding subsection (e) was not proper basis for termination when parents were making

genuine efforts to improve their parenting skills and stay a part of the children's lives).

Because subsection (e) was the only ground upon which the juvenile court relied for terminating Peter's parental rights, we reverse.

**REVERSED.**